**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JAMES F. LOGGINS,**

           **Plaintiff,**                  **Case No. 2:02-cv-964**
                                    **JUDGE GREGORY L. FROST**
     **v.**                          **Magistrate Judge Terence P. Kemp**

**FRANKLIN COUNTY, et al.,**

           **Defendants.**

## OPINION AND ORDER

This matter comes before the Court for consideration of the following sets of filings:

(1) a motion for enlargement of time in which to file affidavits and exhibits filed by Plaintiff, James F. Loggins (Doc. # 191), a memorandum in opposition filed by Defendants (Doc. # 193), and a reply filed by Loggins (Doc. # 194);

(2) a motion for summary judgment filed by Defendants Arlene Shoemaker, Dewey Stokes, and Mary Jo Kilroy (Doc. # 162); a memorandum in opposition filed by Loggins (Doc. # 181); and a reply filed by Shoemaker, Stokes, and Kilroy (Doc. # 189); and

(3) a motion for summary judgment filed by Defendants Sheriff Jim Karnes and Chief Deputy Mark Barrett (Doc. # 163), a memorandum in opposition filed by Loggins (Doc. # 180), and a reply filed by Karnes and Barrett (Doc. # 188).

For the reasons that follow, the Court **DENIES** Loggins' motion for enlargement of time (Doc. # 191), but **GRANTS** Defendants' motions for summary judgment (Docs. # 162, 163).

## I. Background

This Court has previously described the essential facts of this case in several Opinions

1

and Orders. For present purposes, it is necessary to note the following facts:

On September 8, 2001, Plaintiff, James F. Loggins ("Loggins"), was being held in the Franklin County Correction Center II for an alleged probation violation when he was purportedly attacked by his cellmate, inmate Marquis Russell. Loggins sustained injuries in this confrontation. He was transported to The Ohio State University Medical Center, where he underwent surgery for multiple fractures to his jaw that resulted in the insertion of two steel plates in his lower jaw and the removal of two teeth. Loggins' jaw was also wired shut, and he was placed on a liquid-only diet before being returned to the county jail.

Loggins contends that following his return to jail, he was provided with neither his prescribed medication nor a liquid diet. Loggins was eventually released from jail on September 12, 2001, purportedly because of an invalid warrant.

Loggins subsequently filed a complaint on August 28, 2002 in the Franklin County Common Pleas Court against various entities and individuals. (Doc. # 1, Attachment.) The action was removed to this Court on September 27, 2002. (Docs. # 1, 2.) Loggins later amended his Complaint, and, as the docket reflects, many problematic procedural and substantive issues developed (leading to what Defendants correctly describe as an "obese case file"). (Doc. # 189, at 10.)

Eventually, on April 13, 2004, Loggins filed a Third Amended Complaint (Doc. # 106) in which he named the following parties as defendants: The Ohio State University Board of Trustees, The Ohio State University, The Ohio State University Medical Center, Gary Artrip, Robert Cotter, Melinda Brooks, the Franklin County Sheriff's Department, Sheriff Jim Karnes, deputy Mark Barrett, Marquis Russell, and Franklin County Board of Commissioners members

2

Arlene Shoemaker, Dewey Stokes, and  Mary Jo Kilroy.  Several of these parties had previously

been dismissed from the case or had never been served, and others were named for the first time.

Pursuant to a prior April 18, 2003 Order (Doc. # 46), the Court again dismissed Melinda

Brooks in an April 22, 2004 Order (Doc. # 107).  In a September 29, 2004 decision, the Court

dismissed the Franklin County Sheriff's Department as a defendant.  (Doc. # 127.)  That decision

also dismissed Loggins' claims under 42 U.S.C. § 1985 against Karnes, Barrett, Kilroy,

Shoemaker, and Stokes.  Finally, the Court dismissed Gary Artrip, Robert Cotter, The Ohio State

University Board of Trustees, The Ohio State University, and The Ohio State University Medical

Center in an October 14, 2004 decision.  (Doc. # 134.)

The only remaining defendants are Karnes, Barrett, Shoemaker, Stokes, and Kilroy, and

the only remaining federal counts against them are Loggins' claims under 42 U.S.C. § 1983.[1]

Shoemaker, Stokes, and Kilroy filed a joint motion for summary judgment on March 22, 2005.

(Doc. # 162.)  Karnes and Barrett also filed a joint motion for summary judgment on that same

day.  (Doc. # 163.)  After obtaining essentially two extensions of time, Loggins eventually

responded to both motions in April 29, 2005 memoranda in opposition (Docs. # 180, 181), but

proceeded to file evidence opposing summary judgment well beyond the deadline mandated by

the Local Civil Rules (Docs. # 182, 183, 184).  After much consideration, the Court struck that

evidence in a May 12, 2005 Order.  (Doc. # 187.)  Four days later–and *seventeen* days after the

actual filing deadline–Loggins moved the Court for permission to file the stricken affidavits and

---

[1]  Other counts, such as Loggins' 42 U.S.C. § 1985 claims, have been previously
dismissed.  (*See, e.g.*, Doc. # 127.)

exhibits.  (Doc. # 191.)  The parties have completed briefing on all three pending motions, which are now ripe for disposition.

## II.  Motion for Enlargement of Time & Improper Filings

As noted, Loggins has filed a May 16, 2005 motion for enlargement of time in which to file various affidavits and exhibits that he submitted after the filing deadline.  (Doc. # 191.)  This after-the-fact  motion also seeks reconsideration of the Court's May 12, 2005 Order.  (Doc. # 187.)  Although characterizing the "alternative" relief he seeks as reversal or amendment of the Court's prior Order, the relief Loggins seeks is the same: Loggins asks the Court to consider his untimely submissions.  To support this request, Loggins points to his "working interpretation" of this Court's orders and Fed. R. Civ. P. 56, just as he did in opposing Defendants' related motion to strike, and asserts that an unidentified employee of the Clerk of Courts' office is at fault for his counsel's untimely filing.  Without notable elaboration, he also contends that S.D. Ohio Civ. R. 7.2(e) violates his right to due process.

None of Loggins' arguments are well taken.

First, the Court notes Loggins' contention that he did not intend to cause prejudice to Defendants or evince disrespect for the Court by his failure to adhere to the rules governing this litigation.  But the Court also recognizes that this targets only the willfulness of Loggins' actions and not the consequent effect of those actions.

Second, the Court declines Loggins' invitation to equate carelessness, inattention, or willful disregard of the local rules with excusable neglect.  The conduct involved here was at best inexcusable neglect and at worst poor litigation strategy.  Crediting Loggins' representation that he did not intend to prejudice Defendants by his conduct, the Court is left with the premise

4

that he acted as he did because of a misunderstanding of the law.  This is wholly different than a scenario in which unavoidable errors or administrative lapses were responsible for Loggins's actions and fails to suffice to excuse his conduct.  But even if the Court were to accept Loggins' explanation as presenting excusable neglect, the Court in its discretion declines to consider the untimely material for the remaining reasons expressed herein and in the Court's May 12, 2005 decision.

Third, the Court finds no discernible due process violation here.  Due process entails notice and an opportunity to be heard.  The published Local Civil Rules "govern practice and procedure in cases before the United States District Court for the Southern District of Ohio." S.D. Ohio Civ. R. 1.1(c).  They thus provide all counsel and parties with actual notice of this District's filing deadlines and other litigation procedures.  Additionally, nothing in the local rules precludes a party from asking the Court to depart from these rules; S.D. Ohio Civ. R. 1.1(c) in fact contemplates occasional departures from applicability when necessary, stating that the local rules apply "unless otherwise ordered in a given case by the presiding judicial officer."  Despite this implicit opening for filing a motion for the Court to depart from the local rules in this action, Loggins did not attempt to be heard on the matter until well after his failure to abide by the rules affected his litigation strategy.  There has been no lack of notice or opportunity to be heard.

Fourth, the local rules, especially S.D. Ohio Civ. R. 7.2, do not contravene the Federal Rules of Civil Procedure, but instead permissibly function to fill in the gaps that exist within the Federal Rules.  Federal Rule of Civil Procedure 83(a)(1) states that "[e]ach district court, acting by a majority of its district judges, may, after giving appropriate public notice and an opportunity for comment, make and amend rules governing its practice."  As the 1995 Advisory Committee

Notes explain, the local rules adopted must be consistent with the national Federal Rules.  Rule 56(e) does not define what "prior to" means.  The clause does not necessarily mean "up to" as Loggins would have this Court accept, but can be read to mean "before."  Local Civil Rule 7.2 provides a necessary specificity to the national rule.  Further, the enforcement of the local rule in this case is not an impermissible action predicated on a violation of mere requirement of form.  *See* Fed. R. Civ. P. 83(b).  Rather, the Court's action targets a substantive deadline that affects the course of the litigation.

Fifth, to the extent that Loggins attributes his error to flawed advice by an unidentified individual answering the telephone in the Clerk of Courts' office, Loggins has not directed this Court to any authority that the response of an unknown federal employee can excuse or supercede counsel's failure to know, understand, and adhere to the rules of the Court to which she is admitted and in which she practices.  Nor can the advice of a Clerk's employee trump the rules of litigation.  It is equally axiomatic that a Clerk's office employee cannot function as a proxy for a federal judicial officer.   Although the employees of the Clerk can often assist counsel and parties in many valuable respects, legal analysis is not one such area.  An analogous example can be found in the October 2004 *Guide for Counsel in Cases to be Argued before the Supreme Court of the United States*, a publication prepared by the Supreme Court Clerk of Court, which states that "[t]his guide is designed to assist attorneys preparing cases for argument before this Court, especially those who have not argued here.  It is not a substitute for the Rules of the Supreme Court."  *Id*. at 1.  Just as an official publication of the Supreme Court that dispenses advice to counsel is not a binding substitute for the applicable rules of practice, so too is the answer of a clerk employee no substitute for the Local Civil Rules.

6

Sixth, the Court's May 12, 2005 decision did *not* grant summary judgment for Defendants as a sanction or punishment for violation of the Local Civil Rules.  The Court understands that the absence of supporting evidence may harm Loggins' arguments, but the Court balanced that potential harm against the issues involved.  Moreover, as Loggins recognizes (Doc. # 194, at 11), the Court notes that a party moving for summary judgment does not obtain a judgment merely because he or she asks for it, even where the non-movant produces no evidence.  Rather, even in the absence of opposing evidence, the moving party must still demonstrate that he or she is entitled to judgment as a matter of law.  The instant case is therefore not one in which court action would prevent a litigant from offering any defense against a summary judgment motion.  It is instead a case in which court action holds a non-movant to the obligations applicable to all other non-movants in this District, with the effect here of narrowing the documents opposing summary judgment due to that party's own actions.

Seventh, after drafting the foregoing text of this section and then addressing the summary judgment motions, the Court discovered that Defendants were indeed correct in asserting that Loggins has generally failed to cite to evidentiary material in his memoranda in opposition to the summary judgment motions.  It is well settled that a plaintiff cannot evade summary judgment by making bare allegations, but must instead produce evidence.  *Hamilton v. Roberts*, 165 F.3d 27, 1998 WL 639158, at *5 (6th Cir. 1998).  It is also clear that this Court need not scour the record to uncover any such evidence.  *See InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989) ("A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.").

7

Thus, even if the Court had permitted Loggins' untimely filing of affidavits and exhibits, Loggins has often failed to direct this Court to the relevant portions of this material, and the Court is under no duty to examine these documents for portions helpful to Loggins.  The Court shall consider proper evidence to which it is directed in some discernable manner, which inherently means that the Court will not consider improper submissions or otherwise unnecessarily parse the record in search of any potential factual issue. Although this Court appreciates specificity by the parties in pointing to summary judgment evidence, it does not require undue precision in identifying relevant parts of the record.  But Loggins has generally failed to identify even roughly any evidence in the record supporting his key allegations.  His unsupported factual contentions cannot serve as specific facts that enable him to evade summary judgment.  The Court's striking the essentially unreferenced material cannot prejudice Loggins when other choices he has made would negate the utility of that material.

The Court did not lightly strike Loggins' improperly filed material, but fairness and the rule of law compelled such action.  For those same reasons, explained at length in the Court's May 12, 2005 decision (Doc. # 187), the Court **DENIES** Loggins' motion for an enlargement of time/motion for reconsideration.  (Doc. # 191.)  Further, those reasons also compel the Court to **STRIKE** Loggins' untimely May 11, 2005 filing (Doc. # 186), which, although accepted for filing on May 11, 2005, the Clerk placed on the docket only after the filing of the Court's May 12, 2005 decision.

### III.  Summary Judgment Motions

**A.  Standard Involved**

Summary judgment is appropriate "if the pleadings, depositions, answers to

8

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment here if Gregg, the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of Gregg, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52.)

**B. Federal Claims**

Loggins' claims against Defendants are grounded in 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, in order to assert valid § 1983 claim, Loggins must show that, while acting under color of state law, Defendants deprived him of a right secured by the Federal Constitution or laws of the United States. *See Alkire v. Irving,* 330 F.3d 802, 813 (6th Cir. 2003).

Beginning with Loggins' § 1983 claim against Barrett in his individual capacity, the Court concludes that Loggins fails to satisfy his burden. In his memorandum in opposition, Loggins devotes several pages to arguing that Barret *may* be liable if Loggins can demonstrate that "Barrett encouraged his subordinates to ignore [Loggins'] actual physical and medical condition and failed to take any disciplinary action against those who did so in violation of [Loggins'] constitutional rights." (Doc. # 180, at 22.) But the crux of Loggins' effort in proving this set of conditions is to argue that Barrett has failed to produce evidence demonstrating that he personally took action to uphold Loggins' constitutional rights. Such a contention places the inquiry on its head; the question is not whether Barrett has produced evidence supporting no constitutional violation, but whether Loggins has produced evidence that Barrett violated his constitutional rights. To adopt Loggins' repeated characterization of the inquiry would be to reverse the burden of proof by presumptively–and improperly–assuming that a constitutional violation occurred.

There is no evidence that Barrett caused a deprivation of Loggins' rights by either encouraging the misconduct alleged or otherwise directly participating in it. *Taylor v. Michigan Dep't of Corrections*, 69 F.3d 76, 81 (6th Cir. 1005). Barrett's status as a supervisor (who was not even present on one of the days in question) does not serve to create liability, because *respondeat superior* cannot provide a basis for liability here. *See Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 691 (1978). Further, Barrett's status does not create individual

potential liability for Loggins' inadequate medical claim.  The Sixth Circuit has explained:

> [A] public official may not be held liable under § 1983 for the misconduct of those the official supervises unless the plaintiff can demonstrate that the official is culpable because he was personally involved in the allegedly inadequate medical care provided to the deceased or that he otherwise encouraged or condoned others in providing such inadequate medical care.  *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984).  "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."  *Hays v. Jefferson County, Ky.,* 668 F.2d 869, 874 (6th Cir.1982); *see Salehpour v. Univ. of Tenn.,* 159 F.3d 199, 206 (6th Cir.1998) ("[S]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. Instead, the liability must be based upon active unconstitutional behavior.").

*Estate of Young v. Martin*, 70 Fed. Appx. 256, 260 (6th Cir. 2003).

Turning to Loggins' § 1983 claims against Karnes and Barrett in their official capacities, the Court again concludes that no reasonable factfinder could find for Loggins.  Again, Loggins must demonstrate that he was deprived of a right secured by the Constitution or laws of the United States.  Karnes and Barrett correctly note that Loggins has failed to assert facts supporting an equal protection violation.  In regard to his remaining claims–failure to segregate and protect, cruel and unusual punishment, failure to provide sufficient medical care, and failure to train and supervise–Loggins also fails to produce evidence satisfying the elements.

He has, for example, failed to produce evidence " 'showing that a substantial risk of inmate attacks was "longstanding, *pervasive,* well-documented, or expressly noted by prison officials in the past' " or that " 'the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it.' " *Street v. Corrections Corporation of America*, 102 F.3d 810, 815 (6th Cir. 1996) (quoting *Farmer v. Brennan*, 114 S. Ct. 1970, 1981-82 (1994)).  Contrary to Loggins' assertions, Russell was not incarcerated on a felony charge but on a misdemeanor traffic violation.  (Barrett Aff., ¶¶

11

37-38.)  Moreover, Russell had not exhibited a history of violence, even during prior incarceration, and the guards' timely response presents not reasonable inference of deliberate indifference.  Absent a substantial risk of serious harm or evidence that Karnes or Barrett acted with deliberate indifference, Loggins' claim necessarily fails.

The absence of evidence produces a similar result in regard to Loggins' claim for failure to provide sufficient medical care.  The Sixth Circuit has noted that "[t]he Supreme Court decided many years ago that the government has an 'obligation to provide medical care for those whom it is punishing by incarceration,' and that 'deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment.' "  *Tate v. Coffee County, Tenn.*, 48 Fed. Appx. 176, 180 (6th Cir. 2002) *(*quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976) (internal citations omitted)).  The deliberate indifference standard has both an objective and subjective component.  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  The former requires a showing that the harm is sufficiently serious (*i.e.*, a substantial risk of harm), while the latter necessitates demonstrating that the state officials had a sufficiently culpable state of mind (*i.e.*, the official knows of and disregards an excessive risk to inmate health).  *Id*.  *See also Bilaal v. Defiance Publ'g Co.*, No. 3:03 CV 07189, 2004 WL 2750227, at *3 (S.D. Ohio Dec. 1, 2004).  Thus, "[t]he medical provider's indifference must be so severe as to offend the 'evolving standards of decency.' "  *Bilaal*, 2004 WL 2750227, at *3 (quoting *Estelle*, 429 U.S. at 106).

Loggins has again failed to meet his burden.  His claim targets the care he received both immediately after his injury and the care he received after returning to the county jail.  But Loggins' own deposition testimony indicates that it was the guards who initiated procurement of

12

medical treatment following his injury, despite his protestation that he was fine. (Loggins Dep. at 153-54.) He was also provided with some medical care within twenty minutes of his injury. (Loggins Dep. at 138-39; Barrett Aff. ¶ 44.) And as Karnes and Barrett note, there is no evidence in the record that Loggins suffered an adverse consequence as a result of the delay in transport. *See Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1188 (11th Cir. 1994) (" '[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.' ")). *See also Carter v. Vandercook*, 59 Fed. Appx. 52, 54 (6th Cir. 2003). Further, Loggins' complaint about being deprived of a cutting device cannot constitute a constitutional deprivation when he has no right to such a device and he in fact did not ultimately need such a device.

In regard to Loggins' complaints that he did not receive pain medication and a liquid diet as ordered, no reasonable factfinder could conclude that deliberate indifference existed here. The evidence demonstrates that the county jail contracts with The Ohio State University Hospitals for the provision of inmate medical care and that the guards forwarded Loggins' complaints to the medical providers. (Barrett Aff. ¶¶ 21-26, 34.) Contrary to Defendants' apparent implication, they certainly cannot avoid potential liability simply by subcontracting out the provision of medical services. *See Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1248-50 (6th Cir. 1989). But even assuming that the medical providers were indeed remiss in supplying Loggins medicine on time and in providing the proscribed diet, however, Loggins has failed to supply evidence that this lack of attention was not inadvertent or merely negligent as opposed to

13

callous or wanton.  Neither the inadvertent failure to provide adequate medical care nor the

negligent provision of care constitute deliberate indifference.  *Bilaal*, 2004 WL 2750227, at *3

(quoting *Estelle*, 429 U.S. at 106)).  Even gross negligence does not equal deliberate indifference

as a matter of law.  *Soliday v. Miami County, Ohio*, No. C-3-91-153, 1993 WL 1377511, at *14

n.29 (citing *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990)).  Loggins has therefore failed to

produce evidence demonstrating that Defendants held the culpable state of mind.  *See Wilson v.

Corbin*, 929 F.2d 702, 1991 WL 45352, at *3 (6th Cir. 2002) (unpublished table decision)

(finding no constitutional violation in nurse's failure to respond to a single request for

medication; *Murphy v. Bray*, 51 F. Supp. 2d 877, 882 (S.D. Ohio 1999) (finding summary

judgment inappropriate where plaintiff presented deposition testimony indicating that custom

existed of refusing inmates medication).  Further, assuming he can assert such a cause of action,

Loggins' Eighth Amendment claim is also wanting because no reasonable jury could conclude

on the evidence before this Court that he has suffered cruel and unusual punishment.

To satisfy his burden on his remaining federal claim, the failure to train and supervise

claim, Loggins must demonstrate the impropriety of underlying policies.  The Sixth Circuit has

explained:

> Municipalities are not ... liable for every misdeed of their employees and agents.
> "Instead, it is when execution of a government's policy or custom, whether made
> by its lawmakers or by those whose edicts or acts may fairly be said to represent
> official policy, inflicts the injury that the government as an entity is responsible
> under §§ 1983."  [*Monell v. New York City Dep't of Social Services,* 436 U.S.
> 658, 694 (1978).]  This circuit has stated that to satisfy the *Monell* requirements a
> plaintiff must "identify the policy, connect the policy to the city itself and show
> that the particular injury was incurred because of the execution of that policy."
> *Coogan v. City of Wixom,* 820 F.2d 170, 176 (6th Cir.1987) (adopting the test
> articulated in *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984) (en
> banc), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985)).

*Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993).  Thus, what constitutes a

*Monell* policy or custom is of critical import to this case.  The United States Supreme Court has

held:

> [T]he inadequacy of police training may serve as the basis for § 1983 liability
> only where the failure to train amounts to deliberate indifference to the rights of
> persons with whom the police come into contact. ... Only where a municipality's
> failure to train its employees in a relevant respect evidences a "deliberate
> indifference" to the rights of its inhabitants can such a shortcoming be properly
> thought of as a city "policy or custom" that is actionable under § 1983.

*City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989).  The Sixth Circuit has discussed this

possibility:

> A city may also be liable, in narrow circumstances, for failure to train its officials,
> if that failure gives rise to a clearly foreseeable violation of constitutional rights
> reflecting deliberate indifference to them:
>
> > "[I]t may happen that in light of the duties assigned to specific officers or
> > employees the need for more or different training is so obvious, and the
> > inadequacy so likely to result in the violation of constitutional rights, that the
> > policymakers of the city can reasonably be said to have been deliberately
> > indifferent to the need. In that event, the failure to provide proper training may
> > fairly be said to represent a policy for which the city is responsible, and for which
> > the city may be held liable if it actually causes injury."

*Sell v. City of Columbus*, 47 Fed. Appx. 685, 691-92, (6th Cir. 2002) (quoting *City of Canton,*

489 U.S. at 390 ) (footnotes omitted).  The ultimate focus "[i]n resolving the issue of ... liability,

... must be on adequacy of the training program in relation to the tasks the particular officers

must perform."  *City of Canton*, 489 U.S. at 390.

In light of this standard, the Court concludes that Loggins' also cannot evade summary

judgment on his failure to train and supervise claims.  First, there is no apparent constitutional

deprivation here.  Second, even assuming *arguendo* there were, Loggins continues to fail to

identify any specific written policy or memorialized custom dictating that officers are to ignore

the medical needs of a jailed individual.  He also fails to offer an official declaration of such a

policy or custom.  *See, e.g.*, *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (holding that the

testimony of a county jail official established a policy or custom sufficient for § 1983 liability).

Loggins' pleading cannot alone suffice to preclude summary judgment in the absence of

some evidence of a relevant custom or policy.  His reliance on *Sell v. City of Columbus*, where a

plaintiff survived summary judgment by asserting that the defendant city deliberately failed to

supervise, train, and discipline its employees so that they could carry out their assigned duties in

compliance with constitutional requirements, also fails to create an issue of fact.  *Id*., 47 Fed.

Appx. at 694.  This Court has previously explained:

> In *Sell*, various homeowners asserted § 1983 claims against the City after city
> code enforcement officers evicted them without a pre-deprivation hearing.  Their
> complaint asserted, among other theories of liability, a failure to train the officers
> properly and targeted the absence of a policy guiding the officers in making case-
> by-case determinations.
>
> The district court granted summary judgment for the City.  The Sixth
> Circuit reversed, however, and emphasized that the central issue in such cases in
> not whether a city violated a plaintiff's constitutional rights "by failing to
> delineate for its officers each and every condition, and the severity of such
> conditions, giving rise to an emergency necessitating eviction without a hearing."
> *Id*.  Rather, the appellate court explained, the focus of the inquiry must be on the
> adequacy of officer training on the constitutional obligations underlying their job
> responsibilities.  The record's failure to clarify this aspect of officer training
> precluded summary judgment for the defendant in that case because a
> shortcoming in this area "is one that is so likely to lead to a violation of the
> constitutional right [involved in that case] as to be deliberate indifference to
> citizens' constitutional rights, and give rise to municipal liability under § 1983."
> *Id*. at 694-95.

(Doc. # 69, at 7-8.)

The *Sell* rationale remains relevant to, but not controlling of, the instant case.  When

previously addressing the Fed. R. Civ. P. 12(c) motion, the Court had to accept Loggins' factual

16

allegations as true.  This included the representation that there was a policy or custom involved in this case.  The existence of such a presumed policy made this case similar at that point in the litigation to *Sell*, where there was *evidence* of a city custom permitting code enforcement officers to issue emergency vacate orders.  *Id*. at 692.  In the summary judgment context, however, the Court need not and can not accept the existence of an underlying policy or custom based on an unsupported allegation, but must require evidence to support such a contention.  Although Loggins is correct that the Court cautioned that "even if the Court were to construe the [prior] motion as one for summary judgment, the Court recognizes that the rationale of *Sell* might even call for further development of the record and defeat summary judgment here," this statement must be read in context.  (Doc. # 69, at 9.)  The Court assumed that Loggins could do more than suggest that some policy or custom existed–but his case continues to rest on a conclusory allegation unsupported by actual evidence.  Although understandably somewhat confusing, *Sell* cannot stand for the proposition that a mere unsupported allegation in a pleading creates a genuine issue of material fact, because such a holding would puncture Rule 56's requirement of supporting specific facts with evidence.  That cannot be the result the Sixth Circuit intended. Loggins' argument, then, misreads both *Sell* and this Court's interpretation of that case.

Further, even assuming *arguendo* that Loggins' other factual allegations are true, they present only a single, isolated incident of unconstitutional activity.  The Sixth Circuit has recognized, however, the general rule that "evidence of a single incident cannot establish the existence of a policy or custom."  *Hill v. City of Southfield*, 210 F.3d 371, 2000 WL 331980, at *3 (6th Cir. 2000) (unpublished table decision) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985)).

17

Loggins relies on various other cases to present continuing, multiple violations.  Two reasons defeat his argument here.  First, again in contrast to the earlier Rule 12(c) motion, the Court in addressing this summary judgment cannot accept unsupported factual allegations as true.  Second, Loggins has failed to present this Court with evidence of the similarity of these other purported incidents.  Mere allegations in other pleadings do not rise to the level of facts indicating a pattern of impermissible conduct.

This leads to the motion for summary judgment filed by the Franklin County Board of Commissioners members Shoemaker, Stokes, and Kilroy ("the Board").  (Doc. # 162.)  The Court agrees with the Board that Loggins appears to assert essentially a four-pronged § 1983 claim against the commissioners.  Characterizing his claims broadly, Loggins asserts that the Board (1) promulgated a policy of improper medical care, (2) promulgated a policy denying inmates their constitutional rights, (3) failed to train, supervise, and direct the other defendants, and (4) failed to take action to remedy flawed systemic practices resulting in false imprisonment.  In describing these claims, the Court must note that Loggins' Third Amended Complaint, similar to his prior pleadings, is not a model of clarity.  The Court has endeavored to construe the relevant pleading to raise all potential claims fairly asserted against Defendants.

In regard to the first three aspects or prongs set forth above, the Court initially notes that the Board has again presented a detailed structure-of-county-government argument to support its contention that it is simply not charged with creating (and does not set) policies relevant to this case.  The Court need not examine at length that argument here, however, because an even simpler analysis resolves these theories of liability.  First, Loggins has failed to produce any evidence that such policies exist.  Second, he has failed to demonstrate that any actionable

18

policies or customs exist attributable to Karnes (and potentially attributable in turn to the Board/Franklin County).  Third, as the foregoing discussion demonstrates, Loggins has not shown that a constitutional violation has occurred.  Defendants Shoemaker, Stokes, and Kilroy, who explicitly rely in their motion on the arguments advanced by Karnes and Barrett (Doc. # 162, at 6 n.1), are therefore entitled to summary judgment on Loggins' claims against them for promulgating a policy of improper medical care, for promulgating a policy denying inmates their constitutional rights, and for failing to train, supervise, and direct the other defendants.

It thus appears that, construing the Third Amended Complaint broadly, only one claim remains–Loggins' cause of action for the Board's failure to prevent or remedy systemic injustices resulting in false imprisonment.  This "claim" is wholly confounding.  Loggins has presented no viable, cogent theory or relevant evidence indicating why or how the Board is responsible for issuance of the warrant leading to Loggins' detainment or other aspects of the Franklin County judicial system that he apparently attacks.  Loggins' arguments in this regard are without merit.

The Court therefore enters summary judgment on behalf of Defendants Karnes, Barrett, Shoemaker, Stokes, and Kilroy on Loggins' federal claims.

### C.  State Law Claims

Karnes and Barrett also move for summary judgment on any state law claim(s) that Loggins has alleged against them.  (Doc. # 163, at 29-31.)  In his memorandum in opposition, Loggins addresses state law claims against Barrett.  (Doc. # 180, at 23-25.)  It thus does not appear that Loggins asserts any state law claims against Karnes.

Despite the fact that the motion initially targeted Ohio Rev. Code § 2744.02(A)(1)

immunity–before Loggins' response clarified the nature of his pleading–Barrett and Loggins now agree that § 2744.03(A)(6) immunity is at issue. That latter statute provides for immunity from liability unless one of the following exceptions applies:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;
>
> (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;
>
> (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

Ohio Rev. Code § 2744.03(A)(6)(a)-(c). Loggins does not assert any of these three exceptions applies here. Rather, he asserts that as a matter of law § 2744.03 cannot provide immunity when the violation of federal law or the United States Constitution is involved.

As Barrett correctly notes in his reply memorandum, Loggins misreads precedent in making this argument. *Hale v. Vance*, 267 F. Supp. 2d 725 (S.D. Ohio 2003), upon which Loggins relies, actually supports Barrett here because that court applied § 2744.03(A)(6) to a state law claim, without also applying Ohio Rev. Code Chapter 2744 immunity to the § 1983 claims in that case. *Id*. at 736. Although § 2744.03(A)(6) cannot shield an individual from federal claims, it can provide immunity from state law claims absent the application of a statutory exception. *See Oswald v. Lucas County Juvenile Det. Ctr.*, 234 F.3d 1269 (6th Cir. 2000) (applying Chapter 2744 immunity to state law claims but not to federal claims).

There is no evidence that Barrett acted outside the scope of his employment, that he acted

with malicious purpose, in bad faith, or in a wanton or reckless manner, or that another state statute expressly imposes liability on him.  Barrett is thus entitled to summary judgment on the only state law claims remaining in this case.

## IV.  Russell and Doe Defendants

Two issues remain.  The first issue involves the John and Jane Doe Defendants Loggins names in his Third Amended Complaint.  Included within the Karnes/Barrett motion for summary judgment is a request for dismissal of these unnamed defendants, to the extent that they are "County Defendants," because the 120-day period for service under Fed. R. Civ. P. 4(m) has expired.  The record indeed reflects that Loggins has failed to identify and serve these defendants.  To excuse these circumstances, Loggins presents a statute of limitations argument and relation-back argument in his memorandum in opposition.  But as the Karnes/Barrett reply memorandum correctly reasons, neither argument provides cause for evading dismissal here. The Court **DISMISSES WITHOUT PREJUDICE** this action against the Doe Defendants.

The second issue is that the only remaining claim is a state law assault and battery count against Defendant Marquis Russell.  (Doc. # 106, at 20.)  Given the pretrial procedural posture of this case, which would suggest a failure to prosecute dismissal of the claim against Russell, the Court in its discretion declines to exercise its supplemental jurisdiction over Loggins' remaining state law claim, *see* 28 U.S.C. § 1367(c)(3) and (4), and **DISMISSES WITHOUT PREJUDICE** said claim.

## V.  Conclusion

For the foregoing reasons, the Court **DENIES** Loggins' motion for enlargement of time/motion for reconsideration (Doc. # 191), **STRIKES** Loggins' untimely May 11, 2005 filing

(Doc. # 186), and **GRANTS** Defendants' motions for summary judgment (Docs. # 162, 163). The Court further **DISMISSES WITHOUT PREJUDICE** this action against the Doe Defendants. Finally, the Court declines to exercise supplemental jurisdiction over Loggins' state law claim against Defendant Russell and **DISMISSES WITHOUT PREJUDICE** that claim. The Clerk is instructed to enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

      **IT IS SO ORDERED.**

                                    /s/ Gregory L. Frost             
                                  GREGORY L. FROST
                                  UNITED STATES DISTRICT JUDGE